IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ECI SOFTWARE SOLUTIONS, INC., § § Plaintiff, § § v. § § JOHN PLYLER PLUMBING AND § HARDWARE, INC.; OLSHAN LUMBER § COMPANY; AND PROSPERITY § COMPUTER SOLUTIONS, LLC, § § Defendants. § | CASE NO. 2:19-cv-370-JRG |

## PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiff ECI Software Solutions, Inc. ("ECI") submits this Motion to Modify the currently filed Protective Order, (ECF No. 73), to permit ECI's in-house counsel, Mr. Gordon P. Kushner, access to material designated as "Highly Confidential – Attorney's Eyes Only." Mr. Kushner, an active member of the Texas State Bar, is directly and actively involved in ECI's litigation strategy with respect to the above captioned action ("the action"). Given the breadth of Defendants' confidentiality designations, to fulfill his obligations as ECI's counsel and provide the company factually sound legal advice, Mr. Kushner requires access to materials designated as "Highly Confidential – Attorney's Eyes Only." A proposed order modifying the Protective Order to allow Mr. Kushner's requested access is filed concurrently herewith. This Motion is supported by the following Memorandum of Points and Authorities and the Declarations filed in support of this Motion.

### I.   BACKGROUND

On January 4, 2019, the Court entered the Parties' First Amended Protective Order (the "Protective Order"). The Protective Order states that documents containing "Protected Information" may be designated "Confidential" or "Highly Confidential-Attorneys Eyes Only."

(Protective Order, ¶ 2.) The Protective Order broadly defines "Protected Information" as the following:

(i) Protected Information includes non-public information and/or information that qualifies as a "trade secret" under either the Defend Trade Secrets Acts or the Texas Uniform Trade Secret Act including, but not limited to, business, scientific, technical, economic, or engineering information, and proprietary formulas, pricing information, strategies, methods or processes of acquiring business, acquiring assets, or realizing income therefrom; sources of information regarding the producing patty's core business; and/or sources of funding for the core business.

(ii) Protected Information may also include information specifically regarding the value or performance of particular assets, but only if it is material non-public information or the public disclosure of such information would threaten a competitive advantage or information advantage of the producing party.

(iii) Protected Information also includes confidential and/or sensitive personal information such as financial account information, tax returns, tax identification numbers, social security numbers, or the like.

(iv) Protected Information shall not include information or documents that have been publicly disclosed.

(*Id.* at ¶ 1(c).) Protected Information may be designated "Highly Confidential-Attorneys Eyes Only," if the document contains non-public current financial information and/or information that qualifies as a "trade secret" under the Federal Defend Trade Secrets Act or the Texas Uniform Trade Secret Act. (*Id.* at ¶ 4.) Such information includes, but is not limited to, "business, scientific, technical, economic, or engineering information, and proprietary formulas, pricing information, strategies, methods or processes of acquiring business, acquiring assets, or realizing income therefrom; sources of information regarding the producing party's core business; and/or sources of funding for the core business." (*Id.*)

Of the over 40,000 documents Defendants have produced in this case, Defendants have designated over 29,900 documents as "Highly Confidential – Attorney's Eyes Only." (Ex. 1, Decl. of P William Stark, ¶ 3.) Defendants have also designated the entirety of one rebuttal expert report as attorney's eyes only. (*Id.*) Under the terms of the operative Protective Order, the only attorneys that may review these materials are "outside counsel acting on behalf of a Party who has made an appearance in this matter and any attorneys, paralegals or other

employees employed in the same law firm as said counsel." (Protective Order, ¶ 4(a).) Thus, Mr. Gordon P. Kushner, who is ECI's General Counsel, cannot review any of these materials in connection with developing legal advice for ECI and assisting with and directing this litigation.

As an attorney admitted to practice law in Texas, Mr. Kushner has been ECI's General Counsel and chief legal strategist since August 2004. (Ex. 2, Decl. of G. Kushner, ¶ 2.) He is not involved in prosecuting patents, nor is he involved in any scientific research. (*Id.* at ¶ 4.) As ECI's primary litigation strategist, Mr. Kushner has been permitted access to materials designated as "attorney's eyes only" in multiple lawsuits and arbitrations. (*Id.* at ¶ 3.) In each of these instances, Mr. Kushner has abided by the same restrictions as outside counsel and never once has granting Mr. Kushner access to these materials led to the inadvertent disclosure of protected information. (*Id.*)

Mr. Kushner has been involved with this action since its inception. (*Id.* at ¶ 5.) As ECI's chief legal strategist, Mr. Kushner is member of the litigation team and is actively involved in advising his client, ECI, with respect to all material legal decisions. (*Id.*) To the extent this matter goes to trial, it is expected that Mr. Kushner will be a member of the trial team. (*Id.*) Given the breadth of materials that Defendants have designated as attorney's eyes only, Mr. Kushner needs to be able to review these documents in order to make informed decisions about the case and properly advise ECI. (*Id.* at ¶ 7.) Mr. Kushner has agreed to abide by the same restrictions as outside counsel and will execute an agreement to be bound by the terms of the Protective Order. (*Id.*)

## II.   ARGUMENTS AND AUTHORITIES

Good cause exists to modify the existing Protective Order. "The court enjoys broad discretion in entering and modifying [a protective] order," and may modify a protective order if good cause exists for the proposed modification. *See Quintel Tech. Ltd. v. Huawei Techs., Inc.*, No. 4:15CV307, 2017 WL 3712349, at *3 (E.D. Tex. June 12, 2017) (alterations in original). In determining whether a protective order should deny a party's in-house attorney access to information, the court must focus on the risk of "inadvertent or accidental disclosure" and weigh

that risk against the potential that the protective order may impair the other party's ability to prosecute or defend its claims. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). The ultimate goal of "this balancing test is to determine whether counsel's access to the confidential information creates an unacceptable opportunity for inadvertent disclosure." *Life Techs. Corp. v. Biosearch Techs., Inc*., No. 2:09-CV-283-TJW-CE, 2011 WL 1157860, at *1 (E.D. Tex. Mar. 29, 2011) (internal quotation and citation omitted). Here, Mr. Kushner needs access to materials designated as attorney's eyes only to properly advise ECI in connection with this action, and granting him that access will not create a risk of inadvertent disclosure.

A. **Mr. Kushner's is ECI's chief legal strategist and needs access to material designated attorney's eyes only to fulfill his duties as ECI's counsel.**

Like outside counsel, Mr. Kushner is an attorney engaged in the practice of law and his status as in-house counsel for ECI does not bar him from reviewing material designated attorney's eyes only. Courts around the country—including Texas District Courts—have rejected a *per se* ban on in-house counsel receiving access to material designated as attorney's eyes only because, like outside counsel, in-house counsel need access to such information to properly advise their clients. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984) ("access should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, ***without regard to whether a particular counsel is in-house or retained***." (emphasis added)); *see also Merial Ltd. v. Virbac SA*, No. 4:10-CV-181-Y, 2010 WL 11534378, at *7 (N.D. Tex. June 10, 2010) (adopting proposed order giving in-house counsel access to attorney's eyes only material because, "Her full participation as part of the trial team could be essential to the proper handling of this litigation by Plaintiffs' outside counsel."); *and Life Techs. Corp.*, 2011 WL 1157860, at *2 (granting in-house counsel's access to attorneys' eyes-only material because denying him access would impair his ability to act as chief in-house strategist with respect to the litigation).

The same is true, here. Defendants have designated over 29,900 documents as "Highly Confidential – Attorneys Eyes Only." Given that these documents comprise ***over 70 percent*** of

the total documents produced by Defendants in this action, Mr. Kushner cannot be properly appraised of all material facts impacting ECI's legal strategy.[1]  Without access to these materials, Mr. Kushner will be unable to assess the strength of his client's legal positions and the strength of Defendants' potential defenses.  This is particularly true given that Defendants have designated the entirety of a rebuttal expert report as "Highly Confidential – Attorneys Eyes Only."  Mr. Kushner should therefore be given the same level of access as outside counsel because denying Mr. Kushner access to expert reports and the vast majority of the documents produced in the action will "impair Plaintiffs' ability to prosecute its claims."  *See Life Techs. Corp.*, 2011 WL 1157860, at *2.

### B. Any risk of inadvertent disclosure is outweighed by ECI's need to be able to properly prosecute its claims.

Granting Mr. Kushner access to materials designated as "Highly Confidential – Attorneys Eyes Only," will not result in a risk of inadvertent disclosure.  To establish a risk of inadvertent disclosure that warrants barring an in-house lawyer from reviewing materials designated as attorney's eyes only, the party opposing the lawyer's access must identify "specific risks arising from granting" the access.  *Life Techs. Corp.*, 2011 WL 1157860, at *2 (permitting in-house counsel's access to confidential materials because "the Defendants have not identified any specific risk of inadvertent disclosure.").  Unfounded speculation that the in-house lawyer may inadvertently disclose protected information "cannot be the basis for restricting an ongoing attorney-client relationship."  *PACid Grp., LLC v. Apple, Inc.*, No. 6:09-CV-143, 2010 WL 10094684, at *4 (E.D. Tex. Feb. 19, 2010).

Here, Defendants cannot point to any specific risk of inadvertent disclosure arising from granting Mr. Kushner the same level of access as outside counsel.  Mr. Kushner is a member of the Texas Bar and subject to the same ethical obligations as outside counsel.  *U.S. Steel Corp.*, 730 F.2d at 1468 ("Like retained counsel, however, in-house counsel are officers of the court, are

---

[1] Although the operative protective order permits a party to challenge confidentiality designations, this would require ECI to identify for Defendants the particular documents they need to share with ECI's chief legal strategist.  It would also cause unnecessary delay as Defendants would have 14 days to respond to any designation challenge.

**PLAINTIFF'S MOTION TO MODIFY PROTECTIVE ORDER – PAGE 5**

bound by the same Code of Professional Responsibility, and are subject to the same sanctions."). Mr. Kushner is not involved in the prosecution of patents, nor is he involved in ECI's technological research. (Ex. 2, Kushner Decl., ¶ 4); *Life Techs. Corp.*, 2011 WL 1157860, at *3 (concluding that, "Absent evidence that [in-house counsel] is substantially involved in the prosecution of Plaintiffs' patents . . . the likelihood of [in-house counsel] inadvertently disclosing or using Defendants' confidential information is outweighed by the likelihood that denying him access to such information will impair the Plaintiffs' ability to prosecute its claims."). Moreover, Mr. Kushner has been given access to materials designated attorney's eyes only in multiple different matters and never once has that access resulted in an inadvertent disclosure of protected information. (Ex. 2, Kushner Decl., ¶ 3.)

### C. Mr. Kushner is not a competitive decision-maker.

Mr. Kushner is not a competitive decision-maker who should be barred from reviewing materials designated as "Highly Confidential – Attorney's Eyes Only." On occasion, courts have barred in-house attorneys from reviewing confidential materials based on that lawyer's involvement in his client's "competitive decision-making." *See U.S. Steel Corp. v. United States*, 730 F.2d at 1468. Competitive decision-making is, "[S]horthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competition." *In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). "Specifically, courts are concerned about the untenable position counsel would be in if, after viewing other litigants' technology, counsel would be forced to either refuse his client legal advice on competitive matters or violate the protective order's prohibition against revealing technical information." *Round Rock Research, LLC v. Dell Inc.*, No. 4:11-CV-332, 2012 WL 1848672, at *3 (E.D. Tex. Apr. 11, 2012).

Here, Mr. Kushner is not involved in ECI's competitive decision-making. He does not make any decisions relating to the pricing of ECI's products, product design, selection of vendors, or marketing. (Ex. 2, Kushner Decl., ¶ 4.) Mr. Kushner does not personally prosecute

patents, and his primary function is to advise ECI in connection with ongoing legal matters. (*Id.*) These facts establish that Mr. Kushner "is not a competitive decision-maker." *See Merial Ltd. v. Virbac SA*, 2010 WL 11534378, at *6; *see also Intervet, Inc. v. Merial Ltd.*, 241 F.R.D. 55, 58 (D.D.C. 2007) (in-house lawyer was not a "competitive decision-maker" because "her responsibilities as head of intellectual property are exclusively either legal, administrative, or organizational."); *and Glaxo Inc. v. Genpharm Pharm., Inc.*, 796 F. Supp. 872, 876 (E.D.N.C. 1992) (improper to preclude in-house counsel from access to confidential information because he gave no advice to his client about competitive decisions such as pricing, scientific research, sales, or marketing). Thus, given that Mr. Kushner's responsibilities do not touch on "competitive decision-making," he should be permitted to review materials designated as "Highly Confidential – Attorneys Eyes Only" to the same extent as outside counsel.

### III. CONCLUSION

Good cause exists to modify the Protective Order to give Mr. Kushner the same level of access to protected information as outside counsel. As a member of the litigation team and ECI's chief legal strategist, Mr. Kushner needs access to the thousands of documents that Defendants have designated as "Highly Confidential – Attorneys Eyes Only" in order to fulfill his role as ECI's counsel. Mr. Kushner—who has been given access to protected information in multiple other matters without issue—is an attorney admitted to practice law in Texas and is subject to the same ethical obligations as outside counsel. He is also willing to sign an agreement to be bound by the Protective Order. There is, therefore, no risk of inadvertent disclosure of protected information and ECI requests that the Court modify the Protective Order to allow Mr. Kushner to review Protected Information to the same extent as outside counsel.

| | |
|---|---|
| Dated:  January 7, 2020 | Respectfully submitted, |

/s/ *P. William Stark*
Mary-Olga Lovett
  State Bar No.  00789289
  lovettm@gtlaw.com
Rene Trevino
  State Bar No. 24051447
  trevinor@gtlaw.com
**GREENBERG TRAURIG, LLP**
1000 Louisiana, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

Christopher M. LaVigne
  Texas Bar No. 24026984
  lavignec@gtlaw.com
P. William Stark
  Texas Bar No. 24046902
  starkb@gtlaw.com
**GREENBERG TRAURIG, LLP**
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone: (214) 665-3600
Facsimile: (214) 665-3601

**ATTORNEYS FOR PLAINTIFF
ECI SOFTWARE SOLUTIONS, INC.**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have complied with the meet and confer requirement of LOCAL RULE CV-7(h) and Defendants are opposed to this Motion. I conferred with Elisaveta Dolghih by telephone on January 7, 2020 and Chris LaVigne conferred with Ms. Dolghih by e-mail on December 20 and 30, 2019 and January 1, 2020. Defendants are unwilling to allow Mr. Kushner access to all materials that have been designated as "Highly Confidential – Attorneys Eyes Only." Defendants are willing to consider requests for Mr. Kusnher to have access to materials designated as "Highly Confidential – Attorneys Eyes Only" on a document-by-document basis. Discussions have conclusively reached an impasse and leave an open issue for the Court to resolve. Therefore, this Motion is submitted for the Court's consideration.

/s/ *P. William Stark*
P. William Stark

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically and served via the Court's electronic filing system on all counsel who have consented to electronic service on this 7th day of January 2020.

/s/ *P. William Stark*
P. William Stark